UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION


FILED

SEP 3 0 2010

CLERK

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

| | |
|---|---|
| BARRY and KIMBERLY BARRON for<br>themselves, on behalf of D.B. and N.B.,<br>their minor children, and other parents and<br>children so similarly situated, JOEL and<br>DEANNE CURRAN for themselves, on<br>behalf of J.C. and A.C., their minor<br>children, and other parents and children<br>so similarly situated, LEO WILLEY<br>and JENNIFER DANS-WILLEY for<br>themselves, on behalf of S.W. and T.W.,<br>their minor children, and other parents and<br>children so similarly situated,<br>CINDY SPARKS for herself, on behalf of K.S.,<br>her minor child, and other parents and children<br>so similarly situated, TIMOTHY and<br>TERESA NOLD for themselves, on behalf of<br>I.N., their minor child, and other parents and<br>children so similarly situated, | CIV. 09-4111<br><br><br>MEMORANDUM OPINION<br>AND ORDER RE: MOTION<br>TO DISMISS |

Plaintiffs,

vs.

THE STATE OF SOUTH DAKOTA, SOUTH
DAKOTA BOARD OF REGENTS,
DR. ROBERT "TAD" PERRY in his individual
capacity as former Director for the South
Dakota Board of Regents, and
DR. JACK WARNER in his individual capacity
as Director for the South Dakota Board of Regents,

Defendants.

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

Plaintiffs, parents of deaf and hearing impaired children, brought this action against the South

Dakota Board of Regents (Board) and others involved in overseeing deaf education at the South

Dakota School for the Deaf (SDSD). Although Plaintiffs have designated this action a class action,

no certification order has been issued under FED. R. CIV. P. 23, and the Court is considering the

claims of only the named Plaintiffs.[1] Plaintiffs' first cause of action alleges a violation of the South Dakota Constitution based on the Board's decision to cut services at SDSD, to out-source its functions to the Brandon Valley and other school districts, and to close SDSD. Plaintiffs' second cause of action alleges violation of the Education for all Handicapped Children Act, which is now encompassed within the Individuals with Disabilities Education Act (IDEA). Plaintiffs' second cause of action alleges violations of the IDEA for failure to provide their children a free appropriate public education and for procedural and substantive violations of the state and federal requirements for the individualized educational programs (IEPs) applicable to their children. In their third cause of action Plaintiffs seek a declaratory judgment determining that Defendants have violated Plaintiffs' due process rights in making changes to the affected IEPs. Plaintiffs' fourth cause of action seeks money damages under 42 U.S.C. § 1983 for violation of their due process rights. Plaintiffs allege that they constitute a class of "[a]ll deaf or hard of hearing children who are residents of South Dakota under the age of 21, and their parents or legal guardians," and are bringing this action on the behalf of the class.

Plaintiffs, after filing their Complaint, filed an application for a preliminary injunction, seeking to enjoin the Defendants from refusing to admit eligible students to the SDSD, from cutting services offered as the SDSD, and from continuing to out source students to the Brandon Valley School District. Plaintiffs also seek to enjoin Defendants from forcing an outsourced-based agenda which Plaintiffs contend denies deaf and hearing impaired students access to course work in an environment which accommodates their primary mode of communication.

After the application for preliminary injunction was filed, Defendants moved to dismiss Plaintiffs' Complaint pursuant to FED. R. CIV. P. 12(b)(6) on the grounds that Plaintiffs' Complaint fails to state a claim upon which relief can be granted. In support of this motion Defendants contend that Plaintiffs have not accurately presented the current state of South Dakota law based on State Constitutional and statutory provisions applicable to education of the deaf and hearing impaired.

---

[1]The Complaint defines the putative class as "[a]ll deaf or hard of hearing children who are residents of South Dakota under the age of 21, and their parents or legal guardians." Plaintiffs have not presented persuasive evidence that their views in this matter are shared by this entire group.

2

Defendants also request dismissal based on the failure to exhaust administrative remedies under the IDEA. Defendants further maintain that Plaintiffs lack standing in their request for declaratory relief. In addition, Defendants maintain that the cause of action under 42 U.S.C. § 1983 must be dismissed because the State of South Dakota and the Board of Regents do not qualify as "persons" under 42 U.S.C. § 1983. Defendants further maintain that dismissal is required because a § 1983 claim cannot be premised on a violation of state law, because money damages are not available under the IDEA, and because the defendants sued in their individual capacity are protected by qualified immunity.

A status conference was held Thursday, October 15, 2009, at which time this Court expressed its concern regarding the exhaustion issues and advised that this issue must be resolved before further scheduling occurs in this case. Plaintiffs have since filed their brief resisting the motion to dismiss and Defendants have filed their reply. Additional pleadings have been filed in response to new developments in the parties' controversy.

## DISCUSSION

### Conversion to Motion for Summary Judgment

Although this matter was presented to the Court by a motion to dismiss Plaintiffs' Complaint pursuant to FED. R. CIV. P. 12(b)(6), a number of affidavits and documents have been presented to the Court and only a few of the documents have been excluded by the Court. The motion will thus be treated as a motion for summary judgment since the parties, who have made and responded to an application for a preliminary injunction, and who have been afforded the opportunity to present briefs and supporting documents after the Court at the status conference expressed its concerns about the issues in the case, have had an opportunity to present all the material that is pertinent. *See* FED. R. CIV. P. 12(d).

For purposes of the exhaustion issue only, Defendants urge the Court to treat Defendants' Motion to Dismiss as a challenge to the Court's subject-matter jurisdiction under FED. R. CIV. P. 12(b)(1). Defendants cite cases from other Circuits and district court cases within the Eighth Circuit in support of their position that exhaustion of administrative remedies under IDEA is a jurisdictional prerequisite which allows the Court to consider matters outside the pleadings without converting their motion to a motion for summary judgment. This issue has not been clearly resolved by the Eighth Circuit. However, in *Ace Property and Cas. Ins. Co. v. Federal Crop Ins. Co.*, 440 F.3d 992,

3

996 (8th Cir. 2006), the Eighth Circuit explained the difference between jurisdictional and non jurisdictional exhaustion statutes:

> The Supreme Court has indicated that a statute requiring plaintiffs to exhaust administrative remedies before coming into federal court may be either jurisdictional in nature or non jurisdictional, depending on the intent of Congress as evinced by the language used. *See Weinberger v. Salfi*, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975). Under a jurisdictional statute, exhaustion of administrative remedies cannot be excused or waived and the failure by a party to exhaust is a jurisdictional bar. In contrast, a non-jurisdictional statute codifies the common law exhaustion principle under which exhaustion of administrative remedies is favored, but may be excused by a limited number of exceptions to the general rule. *Id.* at 765-66, 95 S.Ct. 2457.

Since the Supreme Court has held that schools, as well as parents, may bypass the administrative process under the Education for all Handicapped Children Act where exhaustion would be futile or inadequate, *see Honig v. Doe*, 484 U.S. 305, 327 (1988), this Court will not treat exhaustion of administrative remedies as a jurisdictional matter. Since the Court will consider matters outside the pleadings, the 12(b)(6) motion "shall be treated as one for summary judgment and disposed of as provided in Rule 56." FED. R. CIV .P. 12(d).

Principles of Summary Judgment

Summary judgment shall be entered if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). In ruling on a motion for summary judgment, the Court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. *AgriStor Leasing v. Farrow*, 826 F.2d 732, 734 (8th Cir. 1987). The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).

Judicial Notice

Plaintiffs have requested that the Court in deciding this case take judicial notice of several documents pursuant to FED. R. EVID. 201. Doc. 18, 45. The documents subject to these requests fall into three categories: news articles regarding South Dakota School for the Deaf, public records for

4

the South Dakota Board of Regents and the South Dakota Legislature, and South Dakota School for the Deaf Website materials. The Defendants objected to Plaintiffs' initial Request for Judicial Notice. The objection primarily targeted the request to take judicial notice of newspaper articles. *See* Doc. 28.

FED. R. EVID. 201 defines a judicially noticed fact as "one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." A court must use caution in determining that a fact is beyond controversy and must avoid admitting evidence through the use of judicial notice in contravention of the relevancy, foundation, and hearsay rules. *American Prairie Const. Co. v. Hoich*, 560 F.3d 780, 797 (8th Cir. 2009).

Courts may properly take judicial notice of newspapers and other publications as evidence of what was in the public realm at the time, but not as evidence that the contents in the publication were accurate. *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010); *Alliance Premier Growth Fund v. Alliance Capital Mgmt.*, 435 F.3d 396, 401 n.15 (3d Cir.2006). Unless the newspaper articles contain matter that has not been disputed or that has been presented in other admissible evidence, the newspaper articles which Plaintiffs have requested this Court to take judicial notice, will be considered only for the limited purpose of what was in the public realm at the time.

It is not uncommon for courts to take judicial notice of factual information found on web sites. *See O'Toole v. Northrop Grumman Corp.*,499 F.3d 1218, 1225 (10 th Cir. 2007)( holding that district abused its discretion by failing to take judicial notice of earnings history on company's website); *City of Monroe Employees Ret. Sys. v. Bridgestone Corp.*, 399 F.3d 651, 655 n.1 (6th Cir. 2005) (judicial notice taken of a term defined on the website of the National Association of Securities Dealers, Inc.); *Schaffer v. Clinton*, 240 F.3d 878, 885 n.8 (10th Cir. 2001) ( judicial notice taken of information found in a political reference almanac's website). The court in determining whether to take judicial notice of evidence presented from legislative and organizational websites will consider the nature of the evidence, the foundation presented for it, and whether the Defendants have challenged the accuracy of this evidence. The Defendants in this case have had the opportunity

to challenge the evidence that is the subject of the requests for judicial notice. *But cf. American Prairie Const. Co. v. Hoich*, 560 F.3d at 797 (district court erred in taking judicial notice of statements made in book discovered by court in its own independent research).

## FACTUAL AND LEGISLATIVE BACKGROUND

South Dakota School for the Deaf

The South Dakota School for the Deaf was established in Sioux Falls, Minnehaha County, South Dakota, in 1880. Before being amended in 1944, Sections 1 and 2 of Article XIV of the South Dakota Constitution, relating to South Dakota's charitable and penal institutions, read as follows:

> Section 1. The charitable and penal institutions of the state of South Dakota shall consist of a penitentiary, insane hospital, a school for the deaf and dumb, a school for the blind and a reform school.
>
> Sec. 2. The state institutions provided for in the preceding section shall be under the control of the State Board of Charities and Corrections, under such rules and restrictions as the Legislature shall provide; such board to consist of not to exceed five members, to be appointed by the Governor and confirmed by the Senate and whose compensation shall be fixed by law.

*Thomas v. State*, 17 S.D. 579, 97 N.W. 1011, 1012 (S.D. 1904). Article XIV, §1 of the South Dakota Constitution no longer references the School for the Deaf and now provides: "The charitable and penal institutions of the state of South Dakota shall consist of a penitentiary, a hospital for the mentally ill, a school for the developmentally disabled, and a reform school for juveniles." The 1944 Constitutional amendment placed the School for the Deaf under the control of the Board of Regents.[2] Several statutory provisions address the State School for the Deaf. S.D.C.L. § 13-62-1 provides: "The State School for the Deaf (School), located at Sioux Falls, in Minnehaha County, shall be under the control of the Board of Regents and so maintained and managed as to afford an appropriate

_____

[2]Article 14, §3 of the South Dakota Constitution now provides:

> The state university, the agriculture college, the school of mines and technology, the normal schools, a school for the deaf, a school for the blind, and all other educational institutions that may be sustained either wholly or in part by the state shall be under the control of a board of five members appointed by the Governor and confirmed by the senate under such rules and restrictions as the Legislature shall provide. The Legislature may increase the number of members to nine.

education to those persons entitled to its benefits." The Board has the power to hire and prescribe the duties of the Superintendent for the School and shall have the power to employ and fix the compensation of the employees of the School. S.D.C.L. § 13-62-4. It is the duty of the Board to preserve and care for buildings, grounds, and all other property belonging to the School. S.D.C.L. § 13-62-5. South Dakota statute further provides: "All persons under twenty-one years of age, whose hearing impairment precludes successful educational benefits of public schools, who are residents of the state, and capable of receiving instruction are eligible for programs provided by the state school for the deaf."S.D.C.L. § 13-62-6. There were two education platforms that existed at the South Dakota School for the deaf in 2008.The first platform, the Bilingual-Bicultural program, focused on serving students using American Sign language. The second program, the oral/aural program, focused on serving those students using Cochlear implants or other assistive hearing devices.

The Governor of South Dakota appointed a Task Force to study and make recommendations regarding the South Dakota School for the Deaf. The task force met four times from May until November of 2008. Public testimony was received from 26 persons, including parents, university faculty, school administrators, representatives of the deaf community, deaf education experts and previous Superintendents of the South Dakota School for the Deaf. The findings reported in the November 2008 Task Force Report revealed changes in the demographics of educational placement for deaf and hard of hearing students in South Dakota. Of the 398 children identified with hearing impairments at the beginning of the 2008-2009 school year, only 32 attended classes on the Sioux Falls School for the Deaf campus. Middle and high school enrollments had been reduced to six students. While only 8% of South Dakota's deaf or hearing impaired children attended classes at the School for the Deaf campus, 91% of the School for the Deaf budget was allocated to the Sioux Falls based educational activities. The report noted that enrollment at the School for the Deaf had dropped steadily since the 1970's due to the reduction of disease-related hearing impairments, regulatory changes encouraging home school district placements, and technological advancements that enlarged the number of children whose hearing could be improved to near normal.

The Task Force Report recommended a mission by which the South Dakota School for the Deaf would provide support services related to deaf and hard of hearing education to Local

7

Education Agencies or local school districts where students were to be educated, and the School for the Deaf would oversee a special education environment in Sioux Falls where the school districts could refer eligible students. The recommended mission also provided that the South Dakota School for the Deaf would provide an environment to accommodate students whose hearing impairments preclude successful educational benefits in the public school and where students who are capable of receiving instruction from the specialized programs available at the School for the Deaf could attend. The admissions process would normally include a 30-day placement for students at the expense of their local school district. The School for the Deaf would support multiple learning platforms for these students within and without the institutional setting.

The School's Admissions Procedure, which was submitted to this Court by Plaintiffs, required a formal referral from the Superintendent of the Local Education Agency to the School's Superintendent. The Admissions Procedure provided that the Superintendent would make a determination regarding the requested placement at the School after receiving a recommendation from the School's Review Team.

On January 22, 2009, the Superintendent for the School for the Dead sent a letter to the parents of students of the School and advised that the Governor's Task Force had recommended a greater focus on outreach services to across the state. The Superintendent also advised that the School would not be offering an instructional program on the Sioux Falls campus the next fall. The Superintendent invited the students and parents to contact him with any questions or concerns.

Minutes from the May 11, 2009 Legislative Research Council Executive Board disclosed an update from the South Dakota School for the Deaf. Dr. Tad Perry, Executive Director of the Board of Regents at the time, reported that the Board of Directors had closed the dormitory at the School when there were only three students housed in the facility. A request for information letter had been sent to school districts to assess interest in working with the School regarding the elementary and preschool auditory and oral participants and the Board had entered into a two-year agreement with the Brandon Valley School District to educate the students in the auditory-oral program. When the School contracted with the Brandon Valley School District to provide the auditory-oral services, efforts were made to ensure that the auditory-oral program was substantially similar to the one that had been at the School for the Deaf. The frequency monitory equipment and two instructors were

8

taken from the School for the Deaf to the Brandon Valley program. The Fred Assam Elementary School, which was to house the program for the Brandon Valley program, is approximately three miles from the physical campus of the South Dakota School for the Deaf. Dr. Perry also reported that plans were being made to double the outreach staff and provide support services to areas outside of Brandon Valley. A task force had recommended a roundtable discussion and forty invitations had been sent to parents and other interested parties to discuss these matters.

Plaintiffs have subsequently provided the Court with the Agenda Item for the Board of Regents' May 13-14, 2010 meeting. The Agenda referenced the 2008 report issued by the Governor's Deaf Education Task Force. The Executive Director for the South Dakota Board of Regents has submitted an affidavit stating that the administrative offices for all programs provided by the School will remain in Sioux Falls within Minnehaha County.

The May 2010 Agenda contained a section entitled "Recommended Action of the Executive Director." This recommended action included approving a contracted services agreement among the Board of Regents, the School for the Deaf, and the Harrisburg School District to provide for the delivery of an educational program for Hearing Impaired Children in pre-kindergarten through Twelfth Grade using Bilingual Pedagogical Methods. The Agenda states that the School would also continue to provide access to specialists staffing its outreach program. The Agenda concludes with the following note:

> It should be noted that SDSD (South Dakota School for the Deaf) retains in its budget sufficient funds to cover tuition expenses for a limited number of students, on a first come first serve basis, in the event that home-school district and families conclude that certain children would benefit most from a traditional deaf education program in a residential institution setting.

## The Plaintiffs

The plaintiffs in this action, parents of deaf children, believe that their children would benefit most from a traditional deaf education program in a residential institution setting. Plaintiffs Teresa and Timothy Nold believe their deaf child needs a signing environment and would be best served in a deaf school, but that the South Dakota School for the Deaf has refused to accept him with the exception of a period of a 45-day placement some time ago. The Nolds' son, who has multiple disabilities, has an interpreter in the public school he attends. The parents concede that their son has

9

made progress on his IEP and that the public school employees "obviously care and do what they can."

Plaintiffs Joel and Deanne Curran have two deaf children One attends the Minnesota State Academy for the Deaf, after having attended the South Dakota School for the Deaf on a full and part-time basis. The Currans contend that the South Dakota School for the Deaf compromised its faculty and eventually did not provide instructors proficient in American Sign language. The other child of the Currans has had a cochlear implant, has autism, and is mainstreamed in the Flandreau School District. This child's vision is progressively decreasing and her parents believe she needs to become fluent in American Sign Language (ASL) through submersion in an ASL environment. This child was denied admission to the South Dakota School for the Deaf in February 2008. Deanne Curran was a member of the Governor's Task Force but did not vote to approve the November 2008 Task Force Report.

Plaintiff Cindy Sparks' son is deaf in one ear and has very limited hearing in the other ear. He communicates primarily through American Sign Language. He attended the South Dakota School for the Deaf but left for the stated reasons that many high school classes were dropped, and that teachers displayed inadequate deaf communication skills. Cindy Sparks' son is now mainstreamed in his home school district and has an ALS interpreter. The boy has struggled with isolation and was much more comfortable in the School for the Deaf environment.

Plaintiffs Leo and Jennifer Willey are profoundly deaf as are their two elementary-age children. American Sign Language is the family's primary language and means of communication. The parents struggled to get their children admitted to the South Dakota School for the Deaf, even though the children had no other disabilities. After the educational opportunities for their children declined, and the enrollment was dwindling at the School, the Willeys had serious concerns about the education their children were receiving. After received the letter in January of 2009 advising that the school would be engaged in outreach services, the family moved to Indianapolis so the children could attend the Indiana School for the Deaf.[3]

---

[3]The Court agrees with the Defendants that any claims brought on behalf of student who have left the School for the Deaf and attended another school district after not having requested a due process hearing for alleged violations of the IDEA while they were students at the School for

The Plaintiffs contend that the Defendants have violated the South Dakota Constitution and state and federal statutory law by refusing to admit students to the School when such a placement is part of the student's Individualized Education Program, by cutting services offered at the school, and by continuing to out source services to the Brandon Valley School District, and more recently, to the Harrisburg School District. None of the named Plaintiff had children in the auditory-oral program at the South Dakota School for the Deaf during the 2008-2009 school year and none were scheduled for the program for the 2009-2010 school year.

Individuals with Disabilities Education Act

Congress enacted the Education of the Handicapped Act in 1975. That Act is now encompassed within the Individuals with Disabilities Education Act (IDEA). The IDEA authorizes federal financial assistance to States that agree to provide disabled children with special education and related services. As a condition of receiving federal financial assistance, a state must implement a policy that assures all handicapped children the right to a free appropriate public education. *See* 20 U.S.C. § 1412(a)(1). An individualized education program (IEP), setting out the child's educational performance, establishing annual objectives, and describing the educational program designed to enable the child to meet those objectives, must be prepared for each handicapped child. 20 U.S.C. §1414(d). The IDEA provides: "To the maximum extent appropriate, children with disabilities, including children in public or private institutions or other care facilities, are educated with children who are not disabled, and special classes, separate schooling, or other removal of children with disabilities from the regular educational environment occurs only when the nature or severity of the disability of a child is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily." 20 U.S.C. § 1412(a)(5).

The IDEA establishes a comprehensive system of procedural safeguards to guarantee parents direct participation in the decisions concerning the education of their handicapped children. *See* 20 U.S.C. § 1415. Parents have a right to examine all relevant records concerning the evaluation and educational placement of their child. 20 U.S.C.§1415(b)(1). Parents also have the right to receive prior written notice whenever the school district proposes or refuses to change the child's placement.

the Deaf have become moot. *See C.N. v. Willmar Public Schools,* 591 F.3d 624, 630-632 (8th Cir. 2010); *Smith v. Special School Dist. No. 1,* 184 F.3d 764, 767 (8th Cir. 1999).

11

20 U.S.C.§ 1415(b)(3). The IDEA also provides an opportunity for a party to register a complaint on any matter relating to the school district's provision of a free appropriate education and an impartial due process hearing on such complaint. 20 U.S.C. § 1415(b)(6), and (f)(1)(A). Both the parents and the school district may seek administrative review of the hearing. 20 U.S.C. § 1415(g). Finally, either party dissatisfied with the final results of the administrative process may file a civil action in state or federal court. 20 U.S.C. § 1415(i)(2).

I

## WHETHER DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' CAUSE OF ACTION FOR VIOLATIONS OF THE INDIVIDUALS WITH DISABILITIES EDUCATION ACT?

### Exhaustion Requirement

The IDEA generally requires a parent who is dissatisfied with an educational decision regarding his or her child to exhaust state administrative remedies before proceeding to federal court. Once those remedies are exhausted, the federal or state court reviews the records of the administrative proceedings, hears additional evidence if requested, and bases its decision on a preponderance of evidence and grants appropriate relief. *See* 20 U.S.C. § 1415(i). It is undisputed that the Plaintiffs did not exhaust administrative remedies. Defendants maintain that the IDEA cause of action must be dismissed for this reason.

The Supreme Court has observed, however, that parents may bypass the administrative process where exhaustion would be futile either as a legal or practical matter or where exhaustion would be inadequate. *See Honig v. Doe*, 484 U.S. 305, 327 (1988). The Eighth Circuit has recognized three situations in which exhaustion of administrative remedies is not a prerequisite. Those situations occur when:

> (1) it would be futile to use the due process procedure; (2) the agency has adopted a policy or pursued a practice of general applicability that is contrary to law; (3) it is improbable that adequate relief can be obtained by pursuing administrative remedies (e.g., the hearing officer lacks the authority to grant the relief sought).

*Digre v. Roseville Schools Independent Dist. No. 623*, 841 F.2d 245, 250 n.3 (8th Cir. 1988).

The reduction of services at and the out-sourcing of services from the School for the Deaf

12

by the Board of Regents is a practice of general applicability, as opposed to a challenged component of a student's I.E.P. The State School for the Deaf is subject to the IDEA. *See* 34 C.F.R. § 300.2(b)(iii). A review of South Dakota's relevant administrative rules, however, reveals that the administrative process contemplates that a school district, not the Board of Regents, be the local education agency subject to the administrative procedures. *See* S.D. ADMIN. R. 24:05:15:05 ("Complaint against a school district"); S.D. ADMIN. R 24:05:21:01 ("Each local education agency must have a current comprehensive plan approved by the school board on file with the district superintendent or designee."); S.D. ADMIN. R 24:05:30:07.01 ("A parent or a school district may file a due process complaint on any matters relating to the identification, evaluation or educational placement of a child with a disability, or the provision of FAPE to the child."); S.D. ADMIN. R 24:05:30:10.01 ("Nothing in this section precludes a hearing officer from ordering a district to comply with procedural requirements under this chapter). In consideration of the administrative scheme, and as a practical matter, it may be more than improbable that a hearing officer could ultimately enforce an order to the Board of Regents to reverse its policy of cutting programs at the School's physical location and out-sourcing services to home school districts.[4] Defendants are not entitled to summary judgment on their exhaustion defense.[5]

The Court will consider the IDEA cause of action on the issues of general applicability of whether the Board of Regents' policy and procedure of cutting programs at the School's physical location and out-sourcing services to home school districts violates the IDEA. In considering this

---

[4]Dominic Smith, a lawyer for South Dakota Advocacy Service, Inc., submitted an affidavit (Doc. 36) which states that the "statutory framework in South Dakota creates a uniquely confusing and muddled bifurcation of authority and responsibility for provision of governmentally mandated educational services. The result is that [South Dakota School for the Deaf] and [the Board of Regents] have taken the position that the mandates of IDEA do not apply to [the South Dakota School for the Deaf]. Smith also concluded that "Parental appeals to the [South Dakota Department of Education] or their LEAs appear futile as neither the [South Dakota Department of Education] nor the LEAs have any apparent authority to effect any change with the [Board of Regents] or the [South Dakota School for the Deaf].

[5]This holding applies to the global challenge involved in this case. The holding is not necessarily precedent for ignoring exhaustion in a challenge to a component of a student's Individual Education Plan.

issue, the Court is cognizant of the admonition that "courts must be careful to avoid imposing their view of preferable educational methods upon the States." *Board of Educ. v. Rowley*, 458 U.S. 176, 207 (1982).

Free Appropriate Public Education

A "free appropriate public education" under the IDEA is defined as special education and related services that--

> (A) have been provided at public expense, under public supervision and direction, and without charge;
> (B) meet the standards of the State educational agency;
> (C) include an appropriate preschool, elementary school, or secondary school education in the State involved; and
> (D) are provided in conformity with the individualized education program required under section 1414(d) of this title.

20 U.S.C. § 1401 (9). The Supreme Court has stated: "[I]f personalized instruction is being provided with sufficient supportive services to permit the child to benefit from the instruction, and the other items on the definitional checklist are satisfied, the child is receiving a 'free appropriate public education' as defined by the Act." *Board of Educ. v. Rowley*, 458 U.S. at 189. The requirement that a State provide specialized educational services to children with disabilities "generates no additional requirement that the services so provided be sufficient to maximize each child's potential 'commensurate with the opportunity provided other children.'" 458 U.S. at 198.

The Plaintiffs allege that the Regents' intent to eliminate programs at the School's historical site in favor of utilizing outreach and outsourced service, amounts to the Regents having "basically given up providing an education" at the School. The Plaintiffs further contend that the rights of the deaf and hard of hearing children have been violated by the following decisions: denying admission at the School to deaf students with other disabilities; denying admission at the School to deaf students from an ASL-trained home; encouraging students to mainstream and otherwise discouraging applications to the School; scaling back and eliminating critical programs such as math, ASL and science and otherwise denying a continuum of educational services as required by law at the School; and eliminating the dormitory and organized transportation to and from the School.

What particular methodology is best for educating the deaf has long been debated among

scholars. See *Board of Educ. v. Rowley*, 458 U.S. at 207 n.29. The IDEA gives the States the primary responsibility to develop and execute educational programs for children with disabilities. *Schaffer v. Weast*, 546 U.S. 49, 52 (2005). The Board of Regents and the Governor's Task Force favor a plan that utilizes the South Dakota School for the Deaf in a different manner than the Plaintiffs believe would be in their children's best interest. The Board of Regents and the Governor's Task Force favor a plan that is consistent with the IDEA's strong preference that handicapped children attend regular classrooms. *See Bradley v. Arkansas Dept. of Educ.*, 443 F.3d 965, 971 (8th Cir. 2006). But although the IDEA also mandates individualized, appropriate education for disabled children, which may not involve main streaming, the IDEA does not require providing a child with the specific educational placement that a child's parents prefers or does not require an educational institution to accede to parents' demands. See *Bradley v. Arkansas Dept. of Educ.*, 443 F.3d at 975; *Blackmon v. Springfield R-XII School Dist.*, 198 F.3d 648, 657 (8th Cir. 1999). The IDEA does not require a state to provide students with more than "meaningful access to education with some educational benefit." *Stringer v. St. James R-1 School Dist.*, 446 F.3d 799, 803 (8th Cir. 2006). Even if a child might learn more quickly at a school for the deaf, the State is not required to provide the best possible education at such an institution if the public schools can provide an appropriate education. *See Springdale School Dist. #50 of Washington County v. Grace*, 693 F.2d 41 (8th Cir. 1982). Even viewing the evidence in the light most favorable to the Plaintiffs, this Court cannot conclude that the Defendants' course of action and plans with regard to the use of the South Dakota School for the Deaf has violated the IDEA by depriving the Plaintiffs' children of a free appropriate public education.

Notice

20 U.S.C. § 1415(b)(3) requires:

> Written prior notice to the parents of the child, in accordance with subsection (c)(1), whenever the local educational agency--
> (A) proposes to initiate or change; or
> (B) refuses to initiate or change,
> the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to the child. [6]

---

[6]20 U.S.C. § 1415(c)(1) provides :
The notice required by subsection (b)(3) shall include--
(A) a description of the action proposed or refused by the agency;

Plaintiffs have requested declaratory relief holding that the decision to terminate services at the South Dakota School for the Deaf and the out-sourcing of the auditory-oral services to Brandon Valley constitutes a change to the IEPs for the affected students which cannot be made without first providing notice and an opportunity to be heard. Plaintiffs have also requested declaratory relief holding that their due process rights were violated by making changes to the affected IEPs without due process of law. The Plaintiffs do not challenge the evidence presented by Defendants that none of the named Plaintiffs had children in the auditory-oral program at the South Dakota School for the Deaf during the 2008-2009 school year and none were scheduled for the program for the 2009-2010 school year. The Court acknowledges, however, that parents and students who have an interest in whether and how the School for the Deaf's on-site programs are diminished would have some interest in adherence to the IDEA's notice requirements even if their IEPs were not affected. Assuming, without deciding, that the Plaintiffs have standing to challenge the procedure in the change of IEP which substituted the auditory-oral program at the site of the School for the Deaf for the one in Brandon Valley, the Court for the following reasons still concludes as a matter of law that the notice provision of 20 U.S.C. § 1415(b)(3) was not violated in out sourcing the auditory-oral program.

In determining whether notice was required under the facts of this case, the Court must consider how the courts have defined "educational placement" and "change in educational placement" under the IDEA. In *Hale v. Poplar Bluff R-I School Dist.*, the Eighth Circuit examined

> (B) an explanation of why the agency proposes or refuses to take the action and a description of each evaluation procedure, assessment, record, or report the agency used as a basis for the proposed or refused action;
> (C) a statement that the parents of a child with a disability have protection under the procedural safeguards of this subchapter and, if this notice is not an initial referral for evaluation, the means by which a copy of a description of the procedural safeguards can be obtained;
> (D) sources for parents to contact to obtain assistance in understanding the provisions of this subchapter;
> (E) a description of other options considered by the IEP Team and the reason why those options were rejected; and
> (F) a description of the factors that are relevant to the agency's proposal or refusal.

the meaning accorded these terms in a case involving the stay-put provision under the IDEA, and observed as follows:

> A transfer to a different school building for fiscal or other reasons unrelated to the disabled child has generally not been deemed a change in placement, whereas an expulsion from school or some other change in location made on account of the disabled child or his behavior has usually been deemed a change in educational placement that violates the stay-put provision if made unilaterally.

280 F.3d 831, 834 (8th Cir. 2002).

The Second Circuit characterized change in "educational placement" for which notice is required under the IDEA as referring only to the "general type of educational program in which the child is placed." *Concerned Parents & Citizens For the Continuing Educ. at Malcom X(PS 79) v. New York City Board of Educ.*, 629 F.2d 751, 753 (2d Cir. 1980). After examining the legislative history of the Education for all Handicapped Children Act the Second Circuit concluded that the transfer of handicapped children in special classes at one school to substantially similar classes at another school did not require notice of a change of placement as it involved a "mere variation in the program itself," even though the district court had found that the transfer involved a change from an "extremely innovative educational program" to one in which there were significant changes in curriculum, extra-curricular activities, class composition and teacher assignment. 629 F.2d at 752-754; *see also Weil v. Board of Elementary & Secondary Educ.*, 931 F.2d 1069, 1072-1073 (5th Cir. Cir. 1991). The Plaintiffs have failed to identify a fundamental change in the IEPs of students who continue to receive auditory-oral services, albeit at a location approximately three miles from the South Dakota School for the Deaf campus.

After viewing the evidence in the light most favorable to the Plaintiffs, this Court cannot conclude that the notice provision of the IDEA has been violated by Defendants. Defendants are entitled to summary judgment on the Plaintiffs' IDEA cause of action.

II

## WHETHER DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' CAUSE OF ACTION UNDER 42 U.S.C. § 1983?

Plaintiffs allege that they are entitled under § 1983 to monetary damages for out-of-pocket losses, and damages for mental anguish, suffering and emotional injury. A civil rights action under

17

42 U.S.C. § 1983 lies when a defendant acting under color of state law violates right secured by the Constitution or federal laws. *Digre v. Roseville Schools Indep. Dist. No. 623*, 841 F.2d 245 (8th Cir.1988). Violations of state law by themselves generally do not support a §1983 cause of action. *See Ebmeier v. Stump*, 70 F.3d 1012, 1013 (8th Cir. 1995). As discussed above, the Plaintiffs cannot establish a violation of the Individuals with Disabilities Education Act. Although Plaintiffs have alleged in their Complaint that Defendants violated their due process rights, they have not clearly articulated or elaborated on the basis of this alleged constitutional violation in the Complaint[7] or other pleadings, affidavits and documents.

The Supreme Court has held that a State is not a "person" amenable to suit under § 1983 because in enacting § 1983 Congress did not intend to override well-established immunities or defenses under the common law," including "[t]he doctrine of sovereign immunity." *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 67 (1989). In addition, the Eighth Circuit has held that the corporate body constituting the Board of Regents, being a political subdivisions of the state, may not be sued under the Civil Rights Act since this entity does not constitute a "person" within the meaning of § 1983. *Prostrollo v. University of South Dakota*, 507 F.2d 775, 777 n.1 (8th Cir. 1974).

Dr. Perry, as the former Director for the South Dakota Board of Regents, and Dr. Warner, as the current Director for the South Dakota Board of Regents, were sued in their individual capacities. State actors, sued in their individual capacities, are "protected by qualified immunity so long as 'their actions could reasonably have been thought consistent with the rights they are alleged to have violated.'" *Gregoire v. Class*, 236 F.3d 413, 417 (8th Cir. 2000) (quoting *Anderson v. Creighton*, 483 U.S. 635, 638 (1987)). The Eighth Circuit has established the following test to determine whether a plaintiff may overcome qualified immunity: "[T]he plaintiff must 'assert a violation of a constitutional or statutory right; that right must have been clearly established at the time of the violation; and, given the facts most favorable to the plaintiff, there must be no genuine

---

[7]If this matter was determined as a motion to dismiss, the cause of action would not survive under that standard since "[a] pleading that offers [merely] 'labels and conclusions' " or " 'naked assertion[s]' devoid of 'further factual enhancement' " does not plausibly establish entitlement to relief under any theory. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

18

issues of material fact as to whether a reasonable official would have known that the alleged action indeed violated that right.'" *Gregoire* at 417 (quoting *Liebe v. Norton*, 157 F.3d 574, 577 (8th Cir. 1998)). The law is clearly established for the purpose of qualified immunity if it gives the defendant officials "fair warning" that their conduct violated an individual's rights when the officials acted. *Hope v. Pelzer*, 536 U.S. 730, 739-40 (2002). In resolving qualified immunity claims, the courts no longer need to first determine whether the facts alleged or shown by a plaintiff make out a violation of a constitutional right. *See Pearson v. Callahan*, 129 S.Ct. 808 (2009)(altering requirement set forth in *Saucier v. Katz*, 533 U.S. 194 (2001)).

The record establishes that at least as far back as 2002 the Board of Regents has been examining the experiences of other states, acknowledging the changes in the deaf population, and studying the literature and educators' views on deaf education in considering whether to restructure the South Dakota School for the Deaf so as to meet the educational needs of South Dakota's deaf and hard of hearing children. While the Plaintiffs may have presented a good faith disagreement with the Regents on the plan and implementation of the plan to restructure the South Dakota School for the Deaf, in viewing the evidence in the light most favorable to the Plaintiffs, the Court finds there is no genuine issue of fact as to whether any of the Defendants acted with the knowledge that their conduct violated any statutory or constitutional rights of the Plaintiffs. The 1983 cause of action is barred by qualified immunity.

III.

## WHETHER DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' CAUSE OF ACTION FOR VIOLATIONS OF STATE LAW?

Although the Court has granted summary judgment in favor of the Defendants on all federal claims over which it has original jurisdiction, the Court has determined that the state claims are not such that the Court should decline to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c).[8]

---

[8]28 U.S.C. § 1367( c) provides:

> The district courts may decline to exercise supplemental jurisdiction over a claim . . . if–
> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

Plaintiffs characterize S.D.C.L. § 13-62-6 and S.D.C.L. § 13-33B-3 as statutory safeguards consistent with federal mandates that preclude the Defendants from restructuring the South Dakota School for the Deaf in the manner it has accomplished or plans to accomplish. S.D.C.L. § 13-62-6 provides in relevant part: "All persons under twenty-one years of age, whose hearing impairment precludes successful educational benefits of public schools, who are residents of the state, and capable of receiving instruction are eligible for programs provided by the state school for the deaf."

S.D.C.L. § 13-33B-3 provides:

> In considering placement and the least restrictive environment for a deaf and hard-of-hearing child, the individualized education program team shall consider the unique communications needs of the child as discussed in § 13-33B-2. In making that determination, the individualized education program team shall consider particularly those program options that provide the pupil with an appropriate and equal opportunity for communication access, including the state school for the deaf which may be the least restrictive environment for a deaf or hard-of-hearing child.

Neither of these statutes, however, precludes the State or the School for the Deaf from providing services to deaf students in outreach programs with local school districts, and neither statute requires the School for the Deaf to educate deaf students at the Sioux Falls campus.

Plaintiffs have also contended that the Defendants in their actions and plans for restructuring the South Dakota School for the Deaf have violated the South Dakota Constitution. Although prior to the 1944 Amendment, Section 1 of Article XIV of the South Dakota Constitution may have required a full service education for deaf students at the Sioux Falls campus for the School for the Deaf, there is no construction of the amended State Constitution which can support such an interpretation. *See Kneip v. Herseth*, 87 S.D. 642, 655, 214 N.W.2d 93, 100 (1974)(although an amendment does not expressly repeal a constitutional provision, if it rewrites and covers the same

(3) the district court has dismissed all claims over which it has original jurisdiction, or
(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

20

subject in the provision, the amendment will supersede the provision and be regarded as a substitute for it).

Plaintiffs also cite *State ex rel. Prchal v. Dailey*, 57 S.D. 554, 234 N.W. 45 (1931), as authority that the common law of South Dakota has been violated by the Defendants. In *Prchal* the South Dakota Supreme Court held that the Board of Regents' control over South Dakota educational institutions does not include the power to create or establish schools or the power to change the character of the institutions. *See also, Kanaly v. Janklow*, 368 N.W.2d 819, 825 (S.D. 1985). The South Dakota Supreme Court, however, has also held that the wisdom of discontinuing courses at an institution under the control of the Board of Regents, when such decision is impacted by adverse financial and general economic conditions, is a matter for the Legislature and the Regents. The South Dakota Supreme Court has further held that in prescribing the curricula for schools within the purposes of state statute, the Regent are subject to little, if any, control. *See State ex rel. Bryant v. Dolan*, 61 S.D. 530, 249 N.W. 923, 924 (S.D. 1933).

The Legislature has given the Board of Regents the power to "govern and regulate each institution under its control in such manner as it deems best calculated to promote the purpose for which the institution is maintained." S.D.C.L § 13-49-13. It has acted within that power in providing programs for deaf persons under the age of twenty-one who reside throughout the State regardless of whether the instruction itself occurs at the Sioux Falls location. Defendants are entitled to summary judgment on Plaintiffs' state law claims. Accordingly,

**IT IS ORDERED** that Defendants' Motion to Dismiss (Doc. 26) which has been converted to a motion for summary judgment, is granted, and that all relief requested in Plaintiffs' Complaint and Motion for Preliminary Injunction (Doc. 12) is denied.

Dated this 30th day of September, 2010.

BY THE COURT:

Lawrence L. Piersol
Unites States District Judge

ATTEST:
JOSEPH HAAS, CLERK

By_____
Deputy